# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

SANDY V. ALSTON,

      Petitioner,

v.                                Case No. 3:20-cv-1116-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for one count of capital sexual battery; one count of child abuse-impregnating a child under the age of 16; and one count of sexual battery. See id. at 1. Petitioner is serving a mandatory life term of incarceration. Respondents filed a Response (Doc. 6; Response) with exhibits (Docs. 6-1, 21; Ex.). Petitioner filed a Reply (Doc. 9) with exhibits (Docs. 9-1 to 9-16). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318

## II.    Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter,

_____

(11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could

3

disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

4

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u> <u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' <u>Duncan v.</u> <u>Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan</u> <u>v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine

> of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome,

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

6

> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>,
> 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice
> prong, [a petitioner] must show that "the errors at trial
> actually and substantially disadvantaged his defense
> so that he was denied fundamental fairness." <u>Id.</u> at
> 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence of
> a showing of cause for the procedural default." <u>Carrier</u>,
> 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and requires
> proof of actual innocence, not just legal innocence.
> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.
> 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## III.   <u>Analysis</u>

Petitioner chose to represent himself at his state court criminal trial. He acknowledged during the trial in front of the jury that he had sexual intercourse with his daughter, but he seemed to suggest that he was unaware of his actions when the offense occurred.[5] <u>See</u> Doc. 21-1 at 28 ("I have never denied the situation of fathering this child. What I am fighting is who was at fault and the jurisdiction, that it didn't happen in Florida."), 31 ("I regret the day. I truly don't remember. And it was truly an accident."), 32 ("Imagine waking up with nobody in your bed knowing I had sex with your daughter, assuming it was your daughter, finding out 5 or 6 months later it was your daughter."). A crime lab analyst for the Florida Department of Law Enforcement testified that Petitioner's DNA matched the DNA of the victim's (Petitioner's daughter) son,

---

[5] In his postconviction motion, Petitioner stated that "he does admit he believes an unintentional intercourse happened between him and [the victim] but earlier childhood abuse did not happen." Doc. 6-1 at 200.

and that the chance Petitioner "is the father versus a random individual through your population is 99.99 percent." Id. at 129.

### A. Grounds One and Two[6]

In Ground One, Petitioner argues that his due process rights were violated because the victim "made [a] contradictory statement concerning prior recanting statement and the [trial] court denied petitioner's . . . right to move for impeachment." Doc. 1 at 3 (emphasis and capitalization omitted). He argues that his trial was unfair because he received the recanted statement two days before trial, and he was under the impression that the victim was not going to testify so he did not have a chance to prepare for her testimony. See id. at 4. He also argues that after his trial, two witnesses indicated they wanted to testify on his behalf about the victim's recanted statement, and while "[t]he [s]tate allowed for the witnesses to testify," the state "failed to examine them concerning anything about the recanted statement." Id. He concludes that "he had no way of knowing that [the victim] was being deceitful about being forced to write a recanted statement until 'after' trial when family members told him that [the victim] was not telling the truth in her testimony concerning them forcing her to write a recanted statement." Id. at 5.

---

[6] Grounds One and Two are similar so the Court addresses them together.

In Ground Two, Petitioner claims that his "Sixth Amendment rights to the U.S. Constitution [were] violated" and he was deprived "of his rights to a fair trial through due process because the State erred" by finding that his postconviction claim of newly discovered evidence was "not cognizable." Id. at 6. He states he "is claiming newly discovered evidence because of witness statements after trial concerning victim testimony [that] would have impeached the victim." Id. (emphasis and capitalization omitted). He asserts that he could not have known what the victim "was going to testify to because all he knew was that she recanted about the abuse and was not going to testify." Id. He contends that "he was denied the right to a compulsory process for witness to be subpoenaed for trial and that they could have testified to the credibility to the victim." Id. He indicates that after his trial, he contacted some family members who told him that "'the victim was not telling the truth about them forcing her to write the recanted statement.'" Id.

Initially, this Court notes that to the extent Petitioner is attempting to raise any claim of trial court error regarding the denial of his request for a continuance or inhibiting his ability to impeach the victim, such claims are procedurally barred. Petitioner did not file a direct appeal, thus he did not raise any trial court error claims in state court. Petitioner has shown neither cause nor prejudice to excuse the procedural bar, nor has he shown a fundamental

miscarriage of justice would result if this Court did not address the claims on the merits.

Petitioner did file a pro se postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850. See Ex. B1 at 165-70. In that motion, as well as in the appeal of the denial of that motion, Petitioner raised claims similar to the claims he raises in Grounds One and Two of the Petition.  See id.; see also Ex. B2.[7] However, in doing so, Petitioner failed to fairly present the federal nature of these claims to the state courts. The Eleventh Circuit has found that when a petitioner has "a claim that could arise under either state or federal law," the petitioner "must clearly indicate to the state courts that he intends to bring a federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 458 (11th Cir. 2015). To do so, "a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts." Id. at 457. However, he must "put the state court on notice that he intend[s] to raise a federal claim . . . by, for example, 'including . . . the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].'" Id. (quoting Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351 (11th Cir. 2012)). "[T]his language must be applied with common sense and in light of the purpose underlying the exhaustion requirement[:] to afford the state

---

[7] The various claims raised in Petitioner's state court motions and briefs are similar and overlap. Thus, the Court considers the entirety of Petitioner's Rule 3.850 motion.

courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotations and citations omitted).

Here, in Petitioner's appellate brief filed during his Rule 3.850 appeal, he mentions "due process," that he did not receive a "fair trial," and that his "Sixth Amendment right for a compulsory process to have witnesses at trial" was violated. <u>See generally</u> Ex. B2. But his sporadic and vague assertions cannot be said to have placed the state court on notice of the federal nature of Petitioner's claim. As such, Grounds One and Two are unexhausted and procedurally barred. Petitioner has shown neither cause nor prejudice to excuse the procedural bars, nor has he shown a fundamental miscarriage of justice would result if the Court did not address these claims on the merits. Thus, Grounds One and Two are due to be denied.

Nevertheless, assuming Petitioner exhausted the federal nature of these claims, Petitioner still is not entitled to federal habeas relief. In denying his Rule 3.850 motion, the postconviction court reasoned as follows:

### Claims of Newly Discovered Evidence

The Defendant asserts his claims in terms of "newly discovered evidence," contending that he did not know that the victim was going to perjure herself at trial and it was only after she testified that he became aware he needed witnesses to impeach her. As he claims "newly discovered evidence," the Court will evaluate the claims to determine whether they meet

the criteria for newly discovered evidence under Rule 3.850(c)(7). The Defendant alleges he has witnesses who could testify the victim told them prior to trial her accusations were false and they were surprised when she went forward with her testimony at trial. These witnesses, in short, would have provided impeachment testimony about the victim's prior inconsistent statements.

To qualify as newly discovered evidence that would entitle him to a new trial, a defendant must first allege and demonstrate that the new evidence was not known to the trial court, the party, or counsel at the time of trial. It must also appear that neither the defendant nor defense counsel could have known of such evidence by the use of due diligence. <u>Davis v. State</u>, 26 So. 3d 519,526 (Fla. 2009).

Additionally, to raise a claim of newly discovered evidence, a defendant must attach witness statements to the post-conviction motion in the form of affidavits. Fl. R. Crim. P. Rule 3.850(c)(7). An affidavit is defined under section 92.525, Florida Statutes (2017), as a document signed by a person under oath before an officer authorized by law to administer oaths. Although some of the witness statements and letters provided by the Defendant are notarized for the purpose of identity, none of these documents contain the statutorily required declaration of veracity, including the statement that the document was signed under penalty of perjury.

The Defendant has asked for more time to secure legally sufficient affidavits, but even if the documents he has provided qualified as affidavits, they do not meet the criteria of newly discovered evidence by providing specific facts affirmatively demonstrating the victim's trial testimony was false to the extent that, upon retrial, the Defendant would most likely be acquitted.

**Ground One: Victim Lied at Trial**

The Defendant asserts the victim committed perjury at trial. He attaches a letter written by the victim prior to trial. In it, she states she "may have been mistaken" about her allegations and has been "forced to go to court." At most, this could have been used to impeach the victim at trial. It is not a recantation nor does it prove her trial testimony was false. The Defendant admits he received a copy of this letter several days before trial started. It would appear he actually received or knew of the letter much earlier, as he filed a pro se motion to dismiss on August 20, 2013, stating that the victim had written a statement recanting her accusations and did not want to testify against him. This was about six months prior to trial.

As he chose to represent himself, it was the Defendant's responsibility to investigate and identify witnesses who could be useful to his case and could provide impeachment evidence to demonstrate the victim's testimony was false. "[A] defendant who elects to proceed without counsel is entirely responsible for his own defense." McKenzie v. State, 153 So. 3d 867, 878 (Fla. 2014). Since the trial was going forward, he reasonably had to reassume the victim was going to testify against him and it was up to him to anticipate how to impeach her. He did not present any witnesses at trial but has no one but himself to blame on this point.

**Ground Two: Victim's Deceit Prejudiced Defendant's Trial Preparation**

The Defendant asserts that family members were convinced the victim was not going to testify against her father because she had "recanted" her accusations and that when she showed up at trial and testified about her sexual abuse, the Defendant did not have witnesses present who could have impeached her testimony. He is apparently claiming this qualifies as

"newly discovered evidence" because he did not expect her to testify and was unprepared to impeach her. As noted above, it was entirely his responsibility to prepare a defense to her accusations. He does not allege that the witnesses he claims could have impeached her were unknown to him or could not have been identified through the use of due diligence.

### Ground Three: Victim's Perjury

This ground is more or less a restatement of the above grounds. The Defendant claims he did not know the victim was going to testify she had been forced to write the "recantation" letter and so he failed to have witnesses present who could have impeached her on this point. He has provided a notarized but unsworn letter from Lillian Clark, in which Ms. Clark states she did not force the victim to write the letter as the victim claimed at trial. Even if the Defendant provided an affidavit from Ms. Clark swearing that she did not force the victim to write the letter, this is not the type of testimony that would be likely to produce an acquittal upon retrial. The victim's letter is not a recantation in conflict with her allegations of ongoing sexual abuse. And, Ms. Clark's testimony would do nothing to overcome the scientific evidence presented at trial that the Defendant was the biological father of the under-aged victim's infant. The same analysis would apply to the letter from Marion Battle, who also states in a notarized but unsworn letter that she did not force the victim to write the letter. The letter from the Defendant's son (which also is not an affidavit) simply accuses the victim of lying but gives no specifics as to what the son would have testified to at trial that would have proved the victim was lying about the long-term abuse she was subjected to. None of these documents are legally sufficient as newly discovered evidence.

## Ground Four: Testimony of Donquie Wilkins

The Defendant asserts that a witness came forward at the sentencing hearing who supported his contention that the victim was lying about being raped by him at the homeless shelter. He claims Donquie Wilkins would have testified at trial to the same facts had she been called as a witness at trial. That Ms. Wilkins did not observe a rape at the shelter is hardly evidence it did not occur. Further, since the Defendant admits he knew Ms. Wilkins from the shelter, it was his responsibility, acting as his own counsel, to investigate and interview witnesses at the shelter who might have knowledge of the facts. He does not state a sufficient basis for finding he could not have discovered Ms. Wilkins' version of events through the use of due diligence prior to trial. He has not provided any document from Ms. Wilkins, sworn or otherwise.

. . . .

The Defendant claims that if these witnesses had testified at trial that the victim was not forced to write the letter, and testified that they had never seen any sexual abuse committed on her, he would have at most been convicted of impregnating a minor. He says "he believes an unintentional intercourse happened between him and [the victim]" but that there was no evidence of other sexual abuse.

The Defendant took on the responsibility of investigating his case and calling witnesses. The fact that he may have been hampered in that endeavor because he was incarcerated prior to trial and perhaps did not understand how to subpoena witnesses does not excuse him. He had the right to and was provided counsel but he declined. He has failed to provide documents that qualify as affidavits and failed to demonstrate he has any newly discovered evidence which he could not have discovered prior to trial

16

through the use of due diligence. It should be noted
that the Defendant was aware of these witnesses prior
to trial, as indicated by a motion to change trial date
he filed on December 23, 2013. In that motion, which
was denied by the Court, he attached a list of
witnesses he intended to call, including Lillian Clark,
Marion Battle and Donquie Wilkins. He has no
grounds for complaining now when he was simply
hoping the victim would not testify against him and so
did not secure the attendance of his witnesses for trial.

Ex. B1 at 189-93 (internal record citations omitted). Petitioner appealed the

denial of his Rule 3.850 motion. Petitioner filed a pro se initial brief, Ex. B2; the

state filed a notice that it would not file an answer brief, Ex. B3; and the First

District Court of Appeal per curiam affirmed the denial without issuing a

written opinion, Ex. B4.

The Court addresses these claims in accordance with the deferential

standard for federal court review of state court adjudications. Upon thorough

review of the record, the Court finds that the state court's adjudication of these

claims was neither contrary to, nor an unreasonable application of, clearly

established federal law. Nor was the state court's adjudication based on an

unreasonable determination of the facts given the evidence presented in the

state court proceedings. As such, Grounds One and Two are denied.

Even if these claims were not entitled to deference, they have no merit. A

review of the trial transcript reflects that the state and Petitioner questioned

the victim about her "recanted statement" during the trial.[8] <u>See</u> Doc. 21-1 at 56-60, 64-65, 109-10. Petitioner also argued during closing that the victim was lying on the stand and the jury should believe her "recanted statement" rather than her trial testimony. <u>Id.</u> at 166. Notably, although Petitioner argues in the Petition that the victim testified that she was "forced to write a recanted statement by family members" and "the only reason she recanted was because her aunts forcing her to testify," Doc. 1 at 4, the trial transcript reflects that the victim testified that she wrote the letter because she thought Petitioner was going to receive a death sentence, <u>id.</u> at 65, but "[n]o one forced [her] to write it." <u>Id.</u> at 110; <u>see also</u> <u>id.</u> at 59 (answering "no" to the question, "Other than your mistaken feeling that your father was getting the death penalty, would you have written the statement?"). The victim suggested that an aunt provided the victim with a similar letter and instructed the victim to write a letter in her own words, <u>id.</u> at 56, 65, but the victim also repeatedly stated that she wrote the letter because she felt bad for her father and did not want him to get the death penalty. <u>See</u> <u>id.</u> at 57, 59, 65. Even if Petitioner presented witnesses who

---

[8] The victim read her "recanted statement" at trial: "I may have been mistak[en] about abuse charges against him [when I] made a report. I was not in my right mind [state]. [I will not make] a credible witness for the DA [but I will s]upport [by pleading] the 5th amendment [if I am forced to go to Court. This is a] matter with the church [and family], not the Court[s]. I do not wish to be contacted or wish to come to court for this matter. I [do] apologize for any misunderstanding and problem[] I may have caused[, but] I am recanting my story. Thank[ you]." Doc. 21-1 at 59 (alterations based on copy of letter found at Ex. B1 at 7).

would have testified that they did not force the victim to write the recantation, in light of the testimony and evidence presented at the trial, there is not a reasonable probability that the outcome of the trial would have been different. The fact that Petitioner represented himself at trial and did not timely subpoena any witnesses did not render his trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). These Grounds have no merit.

### B. Grounds Three and Four[9]

In Ground Three, Petitioner argues that Florida Statute § 775.21, The Florida Sexual Predators Act, "is so vague that it allows the State Attorneys to lean []way outside of the legislative intent for being classified as a sexual predator." Doc. 1 at 8. He claims that "it is unconstitutional for the [s]tate to manipulate the true definition of what a sexual predator actually is." Id. He acknowledges that he "qualifies as a sexual offender more so than a sexual predator." Id. at 9. He contends that it is unfair "to label a person as a sexual predator from a single conviction with the same victim and absolutely no priors and absolutely no way to mitigate the circumstances at sentencing, solely because the victim was under a certain age." Id. He concludes that his due

---

[9] Given the similarities between these two Grounds, the Court addresses them together.

process rights were violated "because he was deprived of the opportunity to prove that he was not a sexual predator and has been subject to discrimination because of it and his reputation has been damaged vindictively." Id. at 10.

In Ground Four, Petitioner claims that his sentence is illegal because "capital sexual battery is not a capital offense or capital felony." Doc. 1 at 11 (emphasis and capitalization omitted). He claims that it is misleading to the jury to charge him with a "capital" offense that is not punishable by death. See id. at 11-12. He argues that "being charged as a capital offender, who has not killed anyone, deprives him of the opportunity to be viewed as a harmless individual." Id. at 12. He "further concludes that there were no substantial injuries or any injuries that would warrant him to receive a mandatory life sentence as his 'first' sex crime conviction under any capital offender statute." Id. at 13. According to Petitioner, "his due process is being violated because he has not been afforded the opportunity to have a separate sentencing hearing as the law states for capital offenders, in order to provide the jury with mitigating circumstances to override all aggravating factors" Id. at 12.

Petitioner raised similar claims in his motion filed pursuant to Florida Rule of Criminal Procedure 3.800(a). See Ex. H1 at 3-7. The postconviction court denied the claims:

### Ground One: Absence of Evidentiary
### Hearing on Dangerousness

The Defendant alleges that his designation as a sexual predator is illegal because he was not granted a hearing on the issue of whether he constituted a danger to the community. He claims that since he is serving a life sentence with no possibility of parole, he cannot ever constitute a danger to the community at large. The Florida legislature has determined that no hearing is necessary; the fact of conviction for listed offenses is sufficient for the designation to be applied. The Florida Supreme Court has found that this is not an unconstitutional denial of due process. Milks v. State, 894 So. 2d 924 (Fla. 2005). No hearing was required and the imposition of the designation was legal.

. . . .

### Ground Three: Mandatory Life without
### Parole is Cruel and Unusual Punishment

The Defendant contends that since sexual battery on a child cannot be deemed a true capital crime, the mandatory imposition of a life sentence without parole is cruel and unusual as it fails to allow a defendant to present mitigation evidence to receive a lesser sentence. Capital or not, the legislature has decided that a mandatory life term without parole is the only permissible sentence for a violation of section 794.011(2), Florida Statutes. The Florida Supreme Court has determined that a mandatory life sentence for violation of this statute does not amount to cruel and unusual punishment under either the federal or state constitution. Adaway v. State, 902 So. 2d 746, 753 (Fla. 2005).

See Doc. 6-1 at 449-50. Petitioner appealed, filing a pro se brief. While he largely

cited to state law in his argument, he also argued that his sentence violates the

"Sixth Amendment and Eighth Amendment of the United States Constitution[,] Due Process laws[,] and cruel and unusual punishment laws." Ex. H2 at 6; <u>see id.</u> at 12 ("[H]is due process is being violated according to the Sixth Amendment of the U.S. Constitution, because being charged as a capital offense does not only mislead the jury into being partial towards the Defendant and the severity of this crime, but also misleads the public and the court . . . ."), 15 ("It would be cruel and unusual punishment and in violation of the 8th Amendment Constitutional Right to sentence him as a capital offender and automatically sentence him to life without the possibility of parole without even being allowed to provide the State with mitigating circumstances."). The state filed a notice that it would not file an answer brief, Ex. H3, and the First DCA per curiam affirmed the denial without issuing a written opinion, Ex. H4.

Assuming these claims are exhausted, this Court addresses the claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Grounds Three and Four are denied.

Even assuming these claims are not entitled to deference, Petitioner still is not entitled to federal habeas relief. The Florida Supreme Court has decided that Florida's Sexual Predator Act does not require a hearing prior to a defendant being classified as a sexual predator; instead, the Act's application is based on the fact of the conviction, not on whether the defendant is currently dangerous. See Milks v. State, 894 So. 2d 924, 926-28 (Fla. 2005) (citing Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 4 (2003) ("[D]ue process does not require the opportunity to prove a fact [(i.e., current dangerousness)] that is not material to the State's statutory scheme."). Thus, Petitioner's due process rights were not violated simply because he was not provided a hearing before being classified as a sexual predator. Additionally, the United States Supreme Court has not held that a mandatory life without parole sentence imposed upon an adult for sexual battery of a child violates the Constitution. Petitioner has failed to show that his mandatory life sentence is violative of the Eighth Amendment's prohibition against cruel and unusual punishment. Grounds Three and Four are without merit and due to be denied.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[10]

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of January, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 1/26
c:
Sandy V. Alston, #131766
Counsel of Record

---

[10] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.